**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BERLIN STEEL CONSTRUCTION COMPANY, | |
|        Plaintiff, | Civil Action No. 18    452 |
|     v. | |
| DALE CORP. | |
|     and | |
| 8200 COMMERCIAL, L.P., | |
|        Defendants. | |

**FILED**

FEB - 5 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk

### COMPLAINT

Plaintiff, Berlin Steel Construction Company ("Berlin Steel"), by and through its counsel, McCarter & English, LLP, hereby files the within Complaint against Dale Corp. ("Dale") and 8200 Commercial, L.P. ("8200 Commercial") and in support thereof, avers as follows:

### Parties

1.      Berlin Steel is a Connecticut corporation with a principal place of business located at 70 Depot Road, Kensington, Connecticut 06037.

2.      Upon information and belief, Defendant, Dale, is a Pennsylvania corporation with a principal place of business located at 70 Limekiln Pike, Glenside, Pennsylvania 19038.

3.      Upon information and belief, Defendant, 8200 Commercial is a Pennsylvania limited partnership with a principal place of business located at 8238 Germantown Avenue, Philadelphia, Pennsylvania 19118.

## Jurisdiction and Venue

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00 and because the action is between citizens of different states.

5.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claim occurred in this District.

## Factual Background

6.     Upon information and belief, on or about June 18, 2014, Dale and 8200 entered into a written contract (the "General Contract") whereby Dale agreed to provide all the necessary labor and materials for the construction of a mixed residential and retail building located at 8200 Germantown Avenue in Philadelphia, Pennsylvania (the "Project").

7.     In or about October of 2014, Dale and Berlin Steel entered into a subcontract (the "Subcontract") whereby Berlin Steel agreed to furnish structural steel and miscellaneous metals for the Project and to furnish necessary labor.

8.     The Subcontract was never executed by Dale and Berlin Steel. A true and correct copy of the most recent red-lined version of the Subcontract provided by Berlin Steel to Dale is attached hereto as **Exhibit A**.

9.     Although the Subcontract was never executed, Berlin Steel continued to furnish structural steel and miscellaneous metals for the Project and Dale received and accepted these materials, which is an unambiguous, overt admission by Dale of the existence of a contract.

10.    Pursuant to the Subcontract, Dale agreed to pay Berlin Steel for Berlin Steel's full and complete performance of the Subcontract in the amount of $3,204,000.00 (the "Subcontract Price").

2

11. In addition, Berlin Steel submitted several change orders to Dale for various additional items of work.

12. Dale either failed to approve these change orders or failed to pay Berlin Steel for amounts due under the change orders.

13. Notwithstanding Dale's failures with respect to the change orders, Berlin Steel performed the additional items of work governed by the change orders

14. Berlin Steel completed its work on the Project in or about September 16, 2017.

15. After completing its work on the Project, Berlin Steel submitted a final application for payment to Dale requesting payment for the amount owed under the subcontract, including change orders and retainage held by Dale throughout the course of the Project. A true and correct copy of Berlin Steel's final Application for Payment (No. 14) is attached hereto as **Exhibit B**.

16. Dale failed to pay Berlin Steel for all amounts due under Application for Payment No. 14.

17. In total, Dale paid Berlin Steel only $2,873,053.80 of the $3,303,642.96 owed to Berlin Steel under the Subcontract.

## COUNT I

## BREACH OF CONTRACT (DALE)

18. Berlin Steel incorporates the foregoing paragraphs as though fully set forth at length herein.

19. Berlin Steel and Dale entered into a contract in which Berlin Steel agreed to furnish structural steel and miscellaneous metals for the Project and to furnish necessary labor. *See* Exhibit A.

20. As set forth in the Subcontract, the Subcontract Price was $3,204,000.00.

3

21.     Berlin Steel performed all of its obligations under the Subcontract.

22.     Berlin Steel submitted several change orders to Dale for various additional items of work and completed the additional items of work governed by the change orders.

23.     Berlin Steel submitted applications for payment in accordance with the Subcontract and requested payment of the full amount owed under the Subcontract.

24.     Dale failed to pay Berlin Steel the full amount owed under the Subcontract. To date, Dale has only paid Berlin Steel $2,873,053.80.

25.     Dale's failure to pay Berlin Steel the full amount owed under the Subcontract constitutes a material breach of the Subcontract.

26.     As a result of Dale's failure to pay Berlin Steel the amount due under the Subcontract, Berlin Steel has incurred damages in the amount of $430,589.16.

**WHEREFORE**, Plaintiff, Berlin Steel Construction Company, respectfully requests that this Honorable Court enter judgment in its favor and against Defendant, in the amount of $430,589.16 and any such other relief that the Court deems equitable and just.

## COUNT II

## VIOLATION OF THE CONTRACTOR AND SUBCONTRACTOR ACT (DALE)

27.     Berlin Steel incorporates the foregoing paragraphs as though fully set forth at length herein.

28.     Berlin Steel has performed all of its obligations in accordance with the provisions of the Subcontract

29.     Dale has not paid Berlin Steel in accordance with the terms of the Subcontract.

30.     Berlin Steel is entitled to payment from Dale under the Subcontract.

4

31.     Pursuant to the Contractor and Subcontractor Payment Act (the "Act"), 73 P.S. § 501, et seq., Berlin Steel is entitled to recover interest at the rate of one percent (1%) per month on the unpaid balance of the Subcontract, which amount has been unreasonably withheld by Dale.

32.     Pursuant to the Act, Berlin Steel is also entitled to recover attorney's fees and expenses incurred in bringing this lawsuit.

33.     Berlin Steel has satisfied all conditions precedent to obtain protection under the Act.

34.     Dales' failure to pay Berlin Steel for materials as well as labor and services is a violation of the Act and entitles Dale to interest, penalties and attorneys' fees.

**WHEREFORE**, Plaintiff, Berlin Steel Construction Company, respectfully requests that this Court enter judgment in an amount in excess of $430,589.16, plus attorney's fees and costs, interest, penalties, and such other relief as the Court deems necessary and just.

## COUNT III

## UNJUST ENRICHMENT (DALE AND 8200 COMMERCIAL)

35.     Berlin Steel incorporates the foregoing paragraphs as though fully set forth at length herein.

36.     Berlin Steel provided materials and labor to the Project at the request of and for the benefit of Dale.

37.     Dale and 8200 Commercial have enjoyed the benefit of the materials and labor provided by Berlin Steel.

38.     It would be inequitable and unjust for Dale and 8200 Commercial to retain the benefit of Berlin Steel's materials and labor without compensating Berlin Steel.

5

39.     The reasonable value of the materials and labor for which Dale and 8200 Commercial have failed to adequately compensate Berlin Steel is an amount in excess of $430,589.16.

**WHEREFORE**, Plaintiff, Berlin Steel Construction Company, respectfully requests that this Court enter judgment in an amount in excess of $430,589.16, plus attorney's fees and costs, interest, penalties, and such other relief as the Court deems necessary and just.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By: _____

Daniel J. Brown, Esquire
Danielle M. Karcich, Esquire
1600 Market Street, Suite 3900
Philadelphia, PA 19103
T: (215) 979-3800
F: (215) 988-4318
dbrown@mccarter.com
dkarcich@mccarter.com

Attorney for Plaintiff,
Dated: February 5, 2018                    Berlin Steel Construction Company

6

# Exhibit A

## SUBCONTRACT
### Division 5 – Structural Steel & Miscellaneous Metals

This Subcontract (the "Subcontract") made ~~October 1~~, 2014 by and between **Berlin Steel Construction Company** (the "Subcontractor"), and **Dale Corp.** (the "Contractor"),

### WITNESSETH:

That for and in consideration of the mutual promises and covenants herein contained, the Subcontractor and the Contractor agree as follows:

**Section A.** The Subcontractor covenants, promises and agrees to furnish all material and personal property of every description, and to diligently and fully perform all work hereinafter described for the construction of **One West** (the "Project") to be located at **8200 Germantown Avenue, Philadelphia, PA** for the use and benefit of **8200 Commercial, LP** (the "Owner"), in strict accordance with the Contract, as defined below, between the Contractor and the Owner entered into on **June 18, 2014** and hereby made a part of this Subcontract by reference. The Subcontractor acknowledges that all such documents have been made available for review, inspection and copying.

**Section B.** The Subcontractor agrees to furnish all necessary management, supervision, labor, materials, machinery, tools, scaffolding, equipment, engineering, testing, transportation, cartage, handling, hoisting, patterns, models, surveys, field measurement, layout, shop drawings, protection of work and labor for winter conditions, utility tap fees, coordination and/or any other act or thing required to diligently and fully perform and complete those portions of the work described in **Exhibit A** attached hereto and hereby made a part of this Subcontract. The Subcontractor further agrees that all shall be performed in accordance with the drawings, plans and/or specifications attached hereto and incorporated herein as **Exhibit D**.

**Section C.** The Contractor agrees to pay the Subcontractor for the full, and complete performance of this Subcontract the sum of **$3,204,000.00**, which price is firm and not subject to escalation, and which includes all applicable federal, state and municipal taxes; and further agrees to make all partial and final payments on account thereof and in accordance with the terms and provisions of the Subcontract Documents, as defined below.

**Section D.** The Subcontractor expressly agrees that the Subcontract price includes (a) all work provided for in the drawings and specifications, together with all work reasonably inferable therefrom (consistent with the scope of the project described in the General Conditions); and (b) all increase in cost foreseen or unforeseen, including without limiting the generality of the foregoing, taxes, labor and materials, the cost of which is to be borne solely by the Subcontractor. All loss or damage arising from any of the work through unforeseen or unusual obstructions, difficulties or delays which may be encountered in the prosecution of same or through the action of the elements shall be borne by the Subcontractor.

**Section E.** General Provisions

Article 1. Definitions

The term "Contract" as used herein refers to the Contract between the Owner and the Contractor for construction of the Project. The term "Contract Documents" as used herein refers to the Contract between the Owner and the Contractor, all plans, drawings, specifications, general conditions, supplemental general conditions, and special conditions, addenda, amendments, and/or instruments of like effect. The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments or addenda incorporated herewith and referred to herein. The term "Subcontract Documents" as used herein refers jointly and/or severally to the aforesaid Contract, Contract Documents and Subcontract. The term "Work" as used herein refers to the work to be performed under this Subcontract as set forth in Section B, as well as any approved change orders.

Article 2. Duties of the Subcontractor

2.1    The Subcontractor is bound to the Contractor by the same terms and conditions and to the fullest extent by which the Contractor is bound to the Owner under the Contract. In the event of any inconsistency between the terms and conditions of the Contract (including the General Conditions), the Contract Documents and this Subcontract, the more inclusive provisions as applicable to the Subcontractor shall govern.

2.2    When requested to do so by the Contractor, the Subcontractor agrees to submit a list of any proposed sub-subcontractors, and the Subcontractor shall not delegate, or further subcontract to others the performance of any of its

obligations or Work required or contemplated by this Subcontract without prior written consent of the Contractor, which shall not be unreasonably withheld.

2.3     If the Subcontractor enters into agreements with any sub-tier subcontractor, it shall require each sub-tier subcontractor to agree in writing to be bound by all provisions of the General Conditions applicable to its Work.

2.4     The Subcontractor hereby warrants that it has investigated and familiarized himself with all laws and codes applicable to its Work; with the availability, cost and suitability of personnel, materials, equipment, utilities, etc; with the prevailing wage scales, union benefits and working conditions, craft jurisdiction, existing labor agreements; all site conditions and restrictions, ~~underground conditions,~~ prevailing weather and climatological conditions; and any other factors which may affect the Subcontractor's Work. All of Subcontractor's Work shall be in strict compliance with all Federal, State and Local Codes. Subcontractor shall not bear the responsibility for contract documents to be in strict compliance with same.

2.5     The Subcontractor further agrees that the Contractor shall not be liable to the Subcontractor on any claim for additional payment or additional time or any claim whatsoever if such claims directly or indirectly result from the Subcontractor's failure to investigate and familiarize itself with the conditions under which this Subcontract is to be performed.

2.6     The Subcontractor warrants it has visited the site and has become familiar with all conditions at the site, including without limitation, the conditions described in the General Conditions. If the Subcontractor encounters subsurface or otherwise concealed physical conditions which differ materially from what is indicated in the Contract Documents or unknown physical conditions of an unusual nature which differ materially from those ordinarily found to exist in the proximity of the Project, Subcontractor shall immediately provide notice to Contractor before conditions are disturbed and in no event later than three (3) days after observance of the condition so that Contractor and Architect can review the condition.

> Subcontractor's prosecution of the steel subcontracting work indicates only that the surface appears satisfactory to the Subcontractor to attach steel materials. Subcontractor is not responsible for the construction or structural sufficiency of the other trades' work or design. Pre-Erection Survey of anchor bolts, bearing plates, or similar appurtenances of attachment are not included.

2.7     Generally, the specifications describe work which cannot be indicated on the drawings and indicate types, qualities and methods of installation of the various materials and equipment required for the Work. It is not intended to mention every item of work in the specifications which can be adequately shown on the drawings nor to show on the drawings all items of work described or required by the specifications even if they are of such nature that they could have been shown thereon. All materials or labor for work which is shown on the drawings or is reasonably inferable therefrom as being necessary to produce a finished job shall be provided by the Subcontractor whether or not the work is expressly covered in the specifications.

2.8     The Subcontractor, before proceeding with any work under its Subcontract will accurately check and verify all previous and surrounding work done by others and determine the correctness of same. The Subcontractor shall field measure all work relating to its work. The failure of the Subcontractor to reasonably detect and disclose any existing discrepancies or nonconformities and report same to the Contractor, in writing, before commencing its work shall relieve the Contractor of any and all responsibility for same, and the Subcontractor shall be responsible and liable for all resulting damages, costs and expenses arising as a result of discrepancies and nonconformities that should have been discovered by the Subcontractor.

Article 3.     Integration and Severability

This Subcontract constitutes the entire agreement between the parties and supersedes all proposals, correspondence, and oral agreements between the Subcontractor and the Contractor if any. Except as otherwise provided for herein, no changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by the parties hereto. The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision.

Article 4.     Payment

4.1     Pursuant to the Contract Documents, Owner is obligated to pay the Contractor as set forth on Exhibit E - Payment Terms/Stored Materials.

4.2     The Subcontractor hereby acknowledges that the Contractor has fully disclosed the Owner's manner of payment pursuant to the Contractor Subcontractor Payment Act, 73 P.S. §§ 501 et seq. and/or the Public Payment Act, 62 P.S. §§ 3901 et seq.

4.3     Provided the Subcontractor's rate of progress and general performance are satisfactory to the Contractor and provided that the Subcontractor is in full compliance with each and every provision of the Subcontract Documents, the Contractor will make partial payments to the Subcontractor on the Contractor pay estimate form in an amount equal to 90% of

the estimated value of work and materials incorporated into the Project (and of materials delivered to the Project site and suitably stored by the Subcontractor) and paid to the Contractor by Owner, less the aggregate of previous payments, within fourteen (14) days of receipt thereof from the Owner or fourteen (14) days after receipt of the Subcontractor's invoice, whichever is later.

4.4     PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

4.5     ~~IN CONSIDERATION~~ FOR CONTRACTOR'S AGREEMENT TO ENTER ~~INTO THE SUBCONTRACT,~~ SUBCONTRACTOR HEREBY AGREES ~~TO WAIVE ALL RIGHTS TO~~ INTEREST ABOVE THE LEGAL RATE, PENALTIES AND/OR ~~ATTORNEY'S FEES~~ PROVIDED BY ~~THE CONTRACTOR~~ AND SUBCONTRACTOR ~~PAYMENT ACT, 73 P.S. §§ 501 ET SEQ.~~ AND/OR THE PUBLIC PAYMENT ACT, 62 P.S. §§ 3901 ~~ET SEQ.~~ `[Deletion rejected! REVIEW!]`

4.6     SUBCONTRACTOR HEREBY AGREES THAT, IF THE OWNER REQUIRES CONTRACTOR TO WAIVE ANY OR ALL OF ITS RIGHTS UNDER THE CONTRACTOR AND SUBCONTRACTOR PAYMENT ACT, 73 P.S. SECTION 501 ET SEQ., AND/OR THE PUBLIC PAYMENT ACT, 62 P.S. §§ 3901 ET SEQ., SUBCONTRACTOR HEREBY AGREES TO SIMILARLY WAIVE ITS RIGHTS UNDER THE ACT.

4.7     The Subcontractor acknowledges that in the event payment is not made to the Contractor for any reason including, but not limited to, default by the Owner, the Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract, with the express understanding that this Subcontract does not establish a third-party beneficiary relationship between any parties. The Subcontractor further agrees that delay in payment for non-payment by the Owner for any reason does not create any separate obligation of the Contractor to pay regardless of the extent of the delay. The Subcontractor acknowledges that it is to be paid exclusively out of a fund the sole source of which is the Owner's payment to the Contractor for this Project. The Contractor's surety, if any, may rely upon both this paragraph and 4.4 as a defense to any claim by the Subcontractor. `[Note: PA Contractor & Sub Payment Act]`

4.8     Upon the execution of this Subcontract, the Subcontractor shall submit to the Contractor a complete and accurate schedule of values of the various parts of its Work. This schedule, when approved by the Contractor, shall be used as the basis for making payments. **Please refer to Exhibit L for Schedule of Values.**

4.9     On a monthly basis, the Subcontractor shall submit a request for partial payment a minimum of five (5) days prior to the date when the Contractor must submit its payment application to the Owner (or the Contractor) in a manner consistent with the schedule of values approved by the Contractor, and representing a true and accurate estimate of the Work completed during the immediately preceding pay period. When required by the Contractor, the Subcontractor shall provide an accurate inventory of materials suitably stored at the job site. Each application shall be accompanied by such invoices, vouchers, waivers, certifications and affidavits as may be required by the Owner and/or the Contractor. Such waivers shall be conditioned upon receipt of payment. The Subcontractor agrees that any application for payment not in compliance may be held over for processing at the beginning of the pay period following correction of such application, with or without notice to the Subcontractor. **Please refer to Exhibit E Payment Terms/Stored Materials for specific information on payment terms from the Owner.**

4.10     No partial payment shall constitute acceptance by the Contractor of the work or material for which the partial payment is made; nor shall any partial payment constitute a waiver of any right to require fulfillment of all the terms of this Subcontract. The Contractor shall promptly advise the Subcontractor in writing if the Owner or the Contractor disapproves of or is withholding all or any of a Request for Payment, including change orders. Even if the Subcontractor disagrees with the Contractor's disapproval, the Subcontractor shall continue to perform all Work under this Subcontract including that in dispute. The Subcontractor shall also take all reasonable steps necessary to ensure that there will be no work stoppage or delay on account of such disapproval. Both parties agree to endeavor to promptly resolve such disputes on an ongoing basis. No change order requests may be added to a request for payment until approved. Payment applications containing unapproved change orders will be rejected.

4.11     The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with ~~any costs and expenses including administrative costs and~~reasonable attorney's fees, if any, which the Contractor may incur in securing recovery thereof.

4.12     The Contractor expressly reserves the right to issue joint checks to the Subcontractor and its materialman, suppliers or subcontractors, or any of the Subcontractor's creditors having potential lien rights and/or claims against the Work, for any payments that are, or may become, due and owing by the Contractor to the Subcontractor under this Subcontract, `[after first providing (5) days written notice to Subcontractor,]`

~~There will be a charge of $500 for each Joint Check that is written, which will be deducted via a change order from your Subcontract.~~

~~4.13    The Contractor may deduct from amounts due or to become due to the Subcontractor on this Project any sum due or to become due to the Contractor from the Subcontractor whether or not said sums are in any way related to this Subcontract or Project.~~

4.14    In the event the Subcontractor is in default of or breaches or fails to comply with any provision of the Subcontract; or in the event that any person asserts, or threatens to assert, any lien or claim, against the Project, the Owner, the Contractor or any Surety arising from the Subcontractor's performance of this Subcontract, the Contractor may, at its option, withhold out of any payments due or to become due to the Subcontractor a sum sufficient to completely protect and indemnify the Contractor and the Owner from all loss, damage and/or expense, including attorney's fees and litigation costs, until the condition requiring such measure has been remedied by the Subcontractor to the satisfaction of the Contractor.  If the Contractor is compelled to expend monies in defending, discharging or otherwise disposing of any claim or lien in excess of retained or withheld sums, the Subcontractor shall, upon demand, reimburse the Contractor for the excess amount so expended, including reasonable attorney's fees and costs incurred by the Contractor incident to such defense and/or incidental to the Contractor's collection from the Subcontractor of such excess.

> and provided Subcontractor has been paid,

> due to the fault of the Subcontractor and provided Subcontractor has been paid

4.15    Notwithstanding anything to the contrary contained in this Subcontract, and without any limitation as to time, the Contractor shall not be obligated to make payments to the Subcontractor under this Subcontract: a) when such payment will leave a balance which is less than the retained percentage plus an amount adequate to satisfy all obligations of the Subcontractor for labor, materials, tools, etc. furnished or to be furnished by the Subcontractor in the performance of its Work; b) when the Subcontractor is or with reasonable probability (as determined by the ~~Contract~~Contractor and Architect) may become unable to comply with or completely perform this Subcontract; c) whenever the Contractor, in its ~~sole~~reasonable discretion, shall determine that the Project is being or is in danger of being delayed by the Subcontractor; d) pending satisfactory correction, replacement and/or restoration of deficient work, material, or supplies, or of any Work rejected if not conforming with this Subcontract or the Subcontract Documents; or e) when the Subcontractor fails to submit certified payroll information as required by the Contract Documents and/or the Owner.

4.16    The Subcontractor agrees, as a condition precedent to payment hereunder, to furnish the Contractor with such partial and/or final releases and/or waiver of liens as the Contractor may from time to time request in the form set forth in the Exhibits C, I, J hereof or, in the event, no form is attached, in the form required by the Contractor.

Article 5.  Final Payment

5.1    Final payment will be made within thirty (30) days after the Subcontractor's Work has been completed to the satisfaction of the Owner and the Contractor, and the Contractor has received from the Owner written acceptance thereof together with payment in full for this portion of the Work.  Final payment is subject to the Contractor's determination that all the requirements of the Subcontract have been met and discharged by the Subcontractor including those items listed in the Contract Documents.  PAYMENT FROM THE OWNER TO THE CONTRACTOR IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.  No final payment shall constitute acceptance by the Contractor of the work or material for which the final payment is made, nor a waiver of any right to require fulfillment of all the terms of this Subcontract.  The Subcontractor hereby agrees to reimburse the Contractor in the event of overpayment, together with any costs and expenses, including administrative costs and attorney's fees, the Contractor may incur in securing recovery thereof.

5.2    The Subcontractor acknowledges that in the event payment is not made to the Contractor for any reason including, but not limited to, default or insolvency by the Owner, the Subcontractor shall look exclusively to the Owner for payment of any and all funds due under this Subcontract, with the express understanding that this contract does not establish a third-party beneficiary relationship between any parties.  The Subcontractor further agrees that delay in payment for non-payment by the Owner for any reason does not create any separate obligation of the Contractor to pay regardless of the extent of the delay.  The Subcontractor acknowledges that it is to be paid exclusively out of a fund the sole source of which is the Owner's payment to the Contractor for ~~this Project~~.  The Contractor's surety, if any, may rely upon both this paragraph and 5.1 as a defense to any claim by the Subcontractor.    | Subcontractor's Work |

Article 6.  Financial Condition of the Subcontractor

If at any time the Contractor in its sole reasonable discretion shall determine that the Subcontractor's financial condition has become impaired or unsatisfactory, the Subcontractor shall furnish additional security satisfactory to the Contractor within ~~three (3~~five (5) days after written demand by the Contractor.  The Contractor, the Owner's representatives

and the architect for the Project (the "Architect") at all times shall have free access to the office, shops and yards of the Subcontractor to verify any information about the Work to be performed by the Subcontractor.

## Article 7. Assignment of Proceeds/Assignment of Work

7.1     The Subcontractor will make no assignment of the proceeds of this Subcontract without the prior written consent of the Contractor, which consent shall not be unreasonably withheld. However, the Contractor shall not be obligated to any assignee of the Subcontractor on account of payments at any time made in good faith to the assignor and shall not be liable to any assignee of the Subcontractor for any amount in excess of the net sums owing the Subcontractor hereunder. By making an assignment of the proceeds hereof, the Subcontractor waives any claims against the Contractor resulting from the Contractor's continued payment to assignees or former assignees, notwithstanding notification to the Contractor of termination of any such assignment. By making an assignment of the proceeds hereof, the Subcontractor agrees to assume full liability for the conveyance to assignees of any payments mistakenly, inadvertently, or otherwise made or addressed to the Subcontractor and the Subcontractor agrees to defend and hold harmless the Contractor from claim or action of any assignee related to this Subcontract.

7.4     The Subcontractor shall not assign, subcontract or sublet any portion of the Work required of this Subcontract without Contractor's prior written consent. If Contractor so consents, Subcontractor remains primarily responsible for any liabilities, actual or potential, as may be imposed on the Contractor due to any obligation or liability of the Subcontractor.

## Article 8. Performance Bond and Labor and Material Bond

The Contractor shall have the right to require the Subcontractor to furnish bonds covering the faithful performance of the Contract and the payment of all obligations arising thereunder as well as lien discharge bonds pursuant to Waiver of Liens [prior to the execution of this Subcontract] and Release Article detailed below. The failure of the Subcontractor to furnish a bond within seven (7) days after having been given _written_ notice of such requirements by the Contractor shall constitute sufficient cause for termination of this Contract without notice.

## Article 9. Unit Price Basis

[prior to the execution of this Subcontract]

If the terms of this Subcontract provide for the payment of Work performed on a unit price basis, the unit of measurement for payment shall be one for Work certified. Verification of weights or quantities will be furnished at the time of delivery. In the event the parties fail to agree on the actual quantity performed, the Contractor shall have the right to measure the quantity of Work in place and make final settlement on the basis of such measurement. Unit prices shall be the same for both additions and deductions.

## Article 10. Equipment and Facilities

The Subcontractor shall provide at its own expense whatever tools, machines, hoisting, equipment, plant, utilities, services' storage sheds, workshops, offices, first aid or emergency treatment facilities, drinking water, temporary facilities and toilets, temporary power, water and any other facility it may deem necessary for the complete performance of all Work required under this Subcontract and shall remove any such installations and thoroughly clean and restore the site and premises at the completion of the Work. If the Subcontractor has occasion to utilize any of the facilities of the Contractor, when and if available, the Subcontractor shall pay an equitable portion of the cost thereof. The Contractor shall bear no responsibility for any loss or damage from any cause whatsoever arising from the Subcontractor's use of such facilities.

## Article 11. Submittals

The Subcontractor agrees to submit the contractually required number of copies of all shop or fabrication drawings, design and performance data, test, samples, operating and/or maintenance manuals for use in the performance of this Subcontract as directed by the Contractor within fifteen (15) days after execution of the Subcontract unless directed to do so within a lesser period by the Contractor. Approval of any of the foregoing by the Contractor, the Owner or the Owner's authorized agent shall under no circumstances alter the requirements of the Subcontract Documents or constitute acceptance by the Contractor of any method, material or equipment not acceptable to the Owner or the Owner's authorized agent. The Subcontractor agrees that the cost of any of the foregoing required hereunder is included in the amount of this Subcontract. **Please refer to Exhibit M Submittal Requirements.**

## Article 12.  Materials Furnished by the Contractor

It is hereby agreed by the Subcontractor, if furnishing labor only for the finishing, installation or erection of materials furnished by the Contractor, that the following costs, without restriction, are to be fully recovered by the Contractor from the Subcontractor: (a) the full cost of material required to replace due to damage by the Subcontractor; (b) the full cost of removing rejected materials when not properly installed or supplied by the Subcontractor; (c) the full cost of altering any Work of the Subcontractor not accepted by the Owner's authorized agent; and (d) the full cost of all additional supervision required by the Contractor including all labor, equipment, material and associated overhead costs.

## Article 13.  Cutting, Patching and Blocking

The Subcontractor shall obtain the Contractor's approval for and shall do any cutting, patching and blocking necessary to complete the Work, and such Work shall be performed to the same standards and shall match any Work performed pursuant to the Contract Documents.

## Article 14.  Maintenance of Site/Temporary Protection

14.1    The Subcontractor agrees to keep the premises, surrounding areas and all finished work clean at all times and to remove from the site all scrap and waste materials resulting from its Work under this Subcontract on a daily basis.

14.2    The Subcontractor shall properly cover and protect the work of others from damage due to the performance of the Work required under this Subcontract, and the Subcontractor shall promptly clean, restore, or pay for the replacement of any such work damaged or soiled in the performance of its own Work.

14.3    The Subcontractor further agrees to furnish protection at all times for its own Work and all materials stored for use under this Subcontract and to bear and be solely liable for all loss and/or damage ~~of any kind to or~~ in connection with said ~~work~~Work and materials at any time prior to the final completion and acceptance thereof, unless said loss or damage is caused ~~solely~~ by the negligence of the Contractor or any of its agents, representative or employees and is subject to recovery under such applicable insurance policies as may be in effect.

14.4    If the Subcontractor fails to promptly perform such cleaning, protection and/or repair as directed by the Contractor, the Contractor shall have the right to proceed with such cleaning, protection and/or repair, and the Subcontractor, ~~on demand therefore,~~ shall repay to the Contractor the actual cost of such work plus a reasonable percentage to cover the Contractor's supervision, insurance, tax and overhead.

14.5    The Subcontractor shall provide all temporary protection, barricades, fencing, flagmen, traffic controls and all other items necessary to protect the Work or the site in order to complete their Work.

14.6    Parking for personnel of the Subcontractor and its sub-subcontractors shall be at designated areas as directed by the Contractor. Any vehicle parking in areas other than indicated are subject to removal at the Subcontractor's expense.

## Article 15.  Payment to Suppliers and Sub-subcontractors

15.1    Prior to performing any Work concerning, relating to, or under this Subcontract and whenever so requested by the Contractor, the Subcontractor shall disclose, in writing, to the Contractor, the names, addresses, telephone numbers, a description of the labor and/or material to be provided, the contract amount, payments made and balances due for all sub-subcontractors, materials suppliers and/or other persons and entities that have or will, supply or transport goods, materials, equipment, machinery, fixtures, services or labor under any agreement with the Subcontractor for the Subcontractor's Work under this Subcontract. In addition, the Subcontractor may, prior to performing any Work concerning, relating to, or under this Subcontract, be required by the Contractor to provide a copy of all such agreements to the Contractor. The disclosures required by this paragraph is a condition precedent to the Subcontractor performing any Work, but, in no event, shall the Contractor's failure to enforce this requirement be deemed to be a waiver of the Contractor's right to so demand disclosure by the Subcontractor. **Please refer to Exhibit N - Subcontractor/Supplier List.**

15.2    The Subcontractor shall pay for all materials and supplies furnished and for all work, labor and services performed as required under this Subcontract, shall execute partial and final releases of liens upon demand by the Contractor, and shall indemnify the Contractor and the Owner against and save them and the premises harmless from any and all claims, demands, liens or suits, for all such material and supplies purchased and for all work, labor and services performed by others, including reimbursement of attorney's fees and any other costs of defense incurred. **Please refer Exhibits I & J - Release of Liens form.** , provided Subcontractor has been paid.

[Margin annotation beside 14.3–14.4:] No backcharge or claim for services rendered or equipment furnished by Contractor to Subcontractor shall be sought to by Contractor unless previously authorized in writing or unless written notice is given to Subcontractor within five (5) days of the event, act or omission that is the basis of the backcharge.

15.3    The Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be used solely for the benefit of persons and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services exclusively for this Project in connection with this Subcontract; that money paid to the Subcontractor pursuant to this Subcontract shall immediately become and constitute a trust fund for the benefit of said persons and firms, and shall not in any instance be diverted by the Subcontractor to any other purpose until all obligations and claims arising hereunder have been fully discharged.

Article 16. Warranties

16.1    The Subcontractor warrants and guarantees the work and materials which it performs or furnishes under this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility by the Owner. The Subcontractor further agrees to assume, as a direct obligation to the Contractor and/or the Owner, any guarantees or warranties which would otherwise be the responsibility of the Contractor or other subcontractors, when such guarantees or warranties have been cancelled as a result of the Subcontractor's operations in performance of this Subcontract.

16.2    Without limitation of the foregoing or other obligations of the Subcontractor provided for in the Subcontract Documents, ~~immediately~~promptly upon the Contractor's demand, the Subcontractor, at its own expense, shall repair, replace, | restore or rebuild, at the Contractor's option, any Work in which defects in materials or workmanship may appear, or which is otherwise not in conformance with the other warranties of the Subcontractor hereunder, or to which damage may occur because of such defects or lack of conformance, within one (1) year from the date of the Owner's and Architect's final acceptance of the project or such longer period as required by the Contract Documents. If the Subcontractor fails to comply, the Contractor may correct such defect or lack of conformance, as the case may be, and the Subcontractor shall immediately reimburse the Contractor for the cost thereof. ← NO SCHEDULE PROVIDED @ BID

Article 17. Time of Performance

17.1    Time is of the essence and the Subcontractor agrees to keep himself thoroughly informed as to the overall progress of the Project; to commence and to prosecute the Work undertaken hereunder in a prompt and diligent manner whenever such Work, or any part of it, becomes available, or at such time or times as the Contractor may direct, so as to promote the general progress of the entire Project; and the Subcontractor shall not by delay or otherwise interfere with or hinder the work or progress of the Contractor or any other subcontractor.

17.2    The Subcontractor shall provide a construction schedule of its Work within ten (10) working days from award of this Subcontract. The schedule shall detail how the Subcontractor shall meet key schedule dates in accordance with the Project Schedule prepared by Contractor. If the Subcontractor fails to provide a construction schedule, the Subcontractor agrees to be bound by the Project Schedule prepared by the Contractor and ~~waives any claim it may have to an extension of time for delays, disruptions, interferences or hindrance for any reason~~. In addition, during the course of the Project, upon the Contractor's request, the Subcontractor shall furnish such evidence as the Contractor may require relating to the Subcontractor's ability to fully perform this Subcontract in the manner and within the time established as herein provided and cash flow expenditures for labor for its Work (which shall include the estimated payroll for each of the trades it will employ by subcontract).

17.3    The Contractor exclusively shall control scheduling and coordination of the Work, including the periodic updating and re-sequencing thereof, if any and the Subcontractor shall comply therewith. The Contractor shall have the right to schedule other work at the same time and in the same areas as the Subcontractor's Work and the Contractor may, at its sole discretion, schedule work during a time of winter conditions. The determination of when winter conditions exist shall rest exclusively with the Contractor.

17.4    The Subcontractor agrees to notify the Contractor of its objection to, or inability to comply with, any directive, notification, order, schedule or revisions thereof dealing with the time or times of its performance hereof, and to do so within three (3) days of the Contractor's issuance thereof.

17.5    Specific requirements as to the time of performance shall take precedence over the more general requirements of this article.

17.6    In the event of any failure of the Subcontractor to complete its Work within the required time, the Subcontractor hereby agrees to reimburse the Contractor for any and all actual and/or liquidated damages that may be assessed

against the Contractor by the Owner, which are directly or indirectly attributable to work caused by the Subcontractor's failure to comply fully with the foregoing provision, but not for causes that are entirely beyond the control of Subcontractor.

17.7    The Subcontractor also agrees to pay to the Contractor such damages as the Contractor may sustain by reason of any delay, ~~directly or indirectly, attributable to or~~ caused by the Subcontractor, including, but not limited to, recovery of the Contractor's overhead and expense related to the managing and supervising of the Contract work.

17.8    At the request of the Contractor, the Subcontractor shall perform certain parts of the Work before other parts, add extra manpower, or order overtime labor in order to comply with the project schedule, ~~all without an increase in the Subcontract price, unless otherwise specifically provided in the General Conditions~~.

17.9    If the Subcontractor shall be delayed in the prosecution or completion of its Work by the act, neglect or default of the Contractor, the Architect, the Owner, or any other subcontractor employed by the Contractor upon the project, or by any damage caused by fire or other casualty for which the Subcontractor is not responsible, or by general strikes or lockouts caused by acts of employees, then the time fixed by the Contractor for the completion of the Subcontract's Work shall be extended for such period of time as shall be determined and fixed by the Architect as the time lost by reason of any or all of the causes aforesaid. This shall be the Subcontractor's sole and exclusive remedy for such delay and in no event shall the Contractor be responsible for any increased costs, charges, expenses or damage of any kind resulting from any such delays. No allowance of an extension of time for performance of this Subcontract will be granted, unless a claim therefore is presented to the Contractor in writing and within ~~forty-eight (48)~~ninety-six (96) hours of the occurrence of the cause thereof, and then only if the Contractor agrees to such an extension of time in its <u>reasonable</u> ~~sole~~ discretion.

[margin note, left side: Subcontractor's knowledge of]

17.10    Work hours for the project are Monday through Friday from 7:00AM to 3:30PM. Should the Subcontractor work outside of these hours for matters of convenience, to meet the project schedule, or other reasons except as directed by the Contractor, then the Subcontractor hereby agrees to reimburse the Contractor for any and all additional supervision and other charges, expenses and other actual costs which are directly or indirectly attributable to performing the Work outside of the normal work hours.

17.11    If in order to expedite the final completion of the Work, the Contractor requests the Subcontractor to work overtime at a time when the Subcontractor is not in default in any of the provisions of this contract, the Subcontractor agrees to work said overtime and it is understood that the Contractor shall pay the Subcontractor therefore only the Subcontractor's extra labor costs over the rate for regular time during the period of such overtime, including additional insurance and taxes incurred by the Subcontractor with respect thereto. Time slips covering said overtime must be submitted to the Contractor's authorized agent for checking and approval. No commissions, fees, overhead, or profit are to be charged by or allowed to the Subcontractor for or on account of said overtime. However, if the Subcontractor shall at any time be behind in the Work herein contemplated, or if in the <u>reasoned</u> opinion of the Contractor, the Subcontractor is delaying the progress of the work necessary to complete the Project, then and in either such event, if requested by the Contractor, the Subcontractor shall cause to be performed overtime work as may be necessary to keep on schedule with the general progress of the work at the Project, and in either such event the cost and expense of such overtime and any other costs incurred shall be borne entirely by the Subcontractor.

## Article 18. <u>Changes in Work</u>

18.1    The Contractor may at any time and without invalidating this Subcontract, by written order and without notice to surety, make changes in the Work consisting of additions, deletions or other revisions, and the Subcontractor shall proceed with the Work as changed and as directed. If said changes cause an increase or decrease in the cost of performance or in the time required for performance an equitable adjustment shall be made when a request is timely made by the Subcontractor, but only upon the written approval of the Contractor. Nothing herein shall excuse the Subcontractor from proceeding with the prosecution of the Work as changed.

18.2    The Subcontract Price shall be adjusted as may be agreed upon between the parties before any change in the Work is made. In pricing changes in the Work, the Subcontractor shall use rates approved by the Contractor in accordance with the following provision. At the time of this Subcontract being signed, or at such later time upon demand by the Contractor, the Subcontractor shall provide the Contractor a list of proposed labor rates for additional work that may arise on the Project. The rates shall identify the following: (1) base labor rate; (2) required fringe benefits; (3) required taxes; (4) required insurances and (5) other required labor mark-ups. The Contractor shall have the exclusive right to reject the Subcontractor's labor rates and establish a reasonable labor rate that the Subcontractor shall use to price changed work. The overhead and profit for changed work, unless otherwise limited by the agreement between the Owner and the Contractor, shall be limited to: (1) a ten percent (10%) mark-up on the Base Labor Rates Cost for overhead and profit: (2) a five percent (5%) mark-up on actual material and equipment costs for overhead and profit; and (3) if such work requires that the Subcontractor

use a subcontractor, the Subcontractor shall limit its subcontractor as set-forth above and the Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for the Subcontractor's overhead and profit. All pricing submitted by the Subcontractor to the Contractor for changed work shall separately list the labor, material and equipment costs as required herein. If changed work results in a deletion of any of the Subcontractor's Work then the fair and reasonable value of the deleted work, ~~as determined by the Contractor, Architect or the Owner, plus ten percent (10%) for overhead and profit,~~ shall be deducted from the Subcontract Price.

18.3    If the Contractor and the Subcontractor are unable to agree on the price for the changed work, the Contractor shall have the right to order the Subcontractor to proceed with the changed work on a time and material basis. When changed work, other than overtime ordered by the Contractor, is performed on a time and material basis, unless otherwise limited by the agreement between the Owner and the Contractor, the Subcontractor shall receive: (1) the actual cost of labor including applicable insurance and payroll taxes, based upon the Approved Labor Rates, plus ten percent (10%) for overhead and profit, and (2) the actual cost of material and equipment, plus five percent (5%) for overhead and profit. Unless otherwise provided for in this Subcontract, the foregoing labor and material costs shall be limited to the following: cost of materials (including sales tax and cost of delivery), cost of labor (including social security, old age, and unemployment insurance and fringe benefits required by agreement or custom); workers or workmen's compensation insurance; bond premiums; rental value of equipment and machinery; and the additional costs of field supervision, with all other costs and expenses deemed to be covered by the allocation for overhead allowed herein. In performing changed work on a time and material basis, if such work requires that the Subcontractor use a subcontractor, the Subcontractor shall limit its subcontractor as set-forth above and the Subcontractor shall be limited to a mark-up of its subcontractor's total of five percent (5%) for the Subcontractor's overhead and profit. Whenever changed work is performed on a time and material basis, the Contractor shall have the right to audit the Subcontractor's books, records, documents and other evidence bearing on the costs and expenses of the Subcontractor for such changed work. On a daily basis during the prosecution of the time and material work, Subcontractor must submit daily time tickets for signature to the Contractor's superintendent for verification of time only. Failure to submit the tickets shall constitute grounds for non-payment for this work.

18.4    No extension to the Subcontractor's time of performance as a result of changed work shall be allowed under this Subcontract unless authorized by the Contractor in writing. The value of the changed work requested by the Subcontractor shall include all costs for delay and disruption to the Subcontractor's Work. The Subcontractor shall not be entitled to any additional compensation for delay and disruption caused by the changed work unless such costs are requested and approved by the Owner. ~~In no event, shall the Subcontractor be entitled to compensation for the collective impact of changed work.~~

18.5    All field non-working supervision, home office costs, accounting fees, project management and field office expenses, insurances, etc shall be considered overhead and shall not be compensable as the cost of the Work.

18.6    All changes to the Work must be executed in writing by the Chief Executive Officer of the Contractor in the form of a written change order prior to any work covered by that change order being performed by the Subcontractor. No verbal agreements will be valid. If changes are signed by any other person, they are not valid and will not be paid. To the extent that the change order is due to a Change Order issued by the Owner to the Contractor, no work shall be performed on the change order until the Change Order is issued by Owner to Contractor and PAYMENT FROM THE OWNER TO THE CONTRACTOR ON SUCH A CHANGE ORDER IS A CONDITION PRECEDENT TO PAYMENT FROM THE CONTRACTOR TO THE SUBCONTRACTOR PURSUANT TO THIS ARTICLE.

18.7    The Subcontractor shall not be permitted to invoice for change order work performed until a written change order is executed by the parties.

Article 19.  Claims for Extra Work and/or Additional Compensation

19.1    The Subcontractor agrees to make any claims to the Contractor for damages or additional compensation based on any alleged extra or additional work, including claims pursuant to Article 18 herein, within three (3) days of being given notice of a change or the discovery of the condition giving rise to request for additional compensation or damages or within sufficient time (48 hours prior to the amount of time set forth in the notice requirement in the Contract between the Contractor and the Owner for like claims) to permit the Contractor to advise the Owner in the manner provided in the Contract Documents for like claims, ~~whichever is shorter.~~ The Contractor will not be liable to the Subcontractor on account of any claim not timely or properly presented or until it is allowed by the Owner. Payment by the Owner to the Contractor (and receipt of funds by the Contractor) for claims by the Subcontractor is a condition ~~precedent~~ to payment by the Contractor to the Subcontractor for such claims and this paragraph shall not serve to contradict the Work required by this Subcontract in Sections A, B and D above.

19.2     The Subcontractor agrees that any liability of the Contractor to the Subcontractor on any claim of any sort by the Subcontractor against the Contractor arising in whole ~~or in part~~ out of any act, omission, default, order, directive, decision or change by the Owner, or which could be the subject of a claim by the Contractor against the Owner, shall be liquidated and limited to whatever the Contractor actually receives from the Owner, if anything, as a result of the presentation of a claim based thereon to the Owner, and the Subcontractor shall have no other or further claims whatsoever against the Contractor based thereon or in any way related thereto. ~~Any claim prosecuted hereunder shall be subject to the sole direction and control of the Contractor.~~

19.3     If the Subcontractor encounters any condition which forms the basis of a claim for extra compensation or time, or any other type of claim, it shall be its duty to give written notice to the Contractor prior to commencing any work involving said condition so the Contractor may inspect said condition and take such steps as the Contractor deems necessary. In the absence of such notice to the Contractor, the Subcontractor shall be fully liable for any and all expense, loss or damage resulting from said condition. It is also agreed that the Subcontractor shall not be entitled to any additional payment or compensation under this Subcontract without the express written approval or the Contractor. No officer, employee or agent of the Contractor is authorized to direct any extra work by oral order, except minor changes in the Work not involving extra cost or time.

~~19.4.1     The parties hereby agree that the Subcontractor is undertaking all excavation work and related subsurface work on an "unclassified" basis. For the purposes of this Contract, "unclassified" means that the Subcontractor will not be entitled to an adjustment in either the Contract Sum or Contract Time due to the discovery of concealed or unknown physical conditions at the site even if those conditions differ materially from those indicated in the Contract Documents, from those conditions ordinarily found to exist in the location of the Project or from those generally recognized as inherent in construction activities of the character provided for in the Contract Documents, and the Subcontractor will be required to remove all material encountered necessary to perform its Work, and the cost of such additional Work, if any, has been included in the Contract Sum. The Subcontractor agrees that it has included in its price all types of earth and soil, which shall include, but not be limited to, any pebbles, boulders and bedrock, municipal waste, rubbish, and garbage and all types of debris of the construction industry including, but not limited to, wood, stone, concrete, plaster, brick, steel, pipe, wire, paper and glass, but does not include unforeseen concrete foundations, walls or slabs. All materials shall be removed to the required widths and depths to accommodate the Work at no additional cost to the Contractor.~~

~~19.4.2     Wherever subsurface material information is indicated in the bid package information or drawings, based upon soundings, dug test pits, and/or auger or test borings or other information contained in geotechnical reports or similar documents, such information relative to the character of subsurface material is of a preliminary nature and has been obtained for the exclusive use of the Owner to facilitate the design of the Project. Therefore, this information is not to be considered as a part of the drawings, cross-sections, proposal, or contract, or as a factor for computation of the prices used for bidding purposes. There is no express or implied agreement that the depths or the character of material have been correctly indicated at, or that uniformity of material exists between, the explored locations and the bidder is expressly cautioned to rely on the privileged information, but to assume the possibility that conditions, affecting the cost and/or quantities of work to be performed, may differ from those indicated.~~

~~19.4.3     The Subcontractor further covenants and warrants that it had sufficient time to examine the site of the Work, that it has examined the site of the Work; that it has had sufficient time to examine the site of the Work to determine the character of the subsurface material and conditions to be encountered; and that it has based the within contract prices on its own independent examination and investigation of the site, subsurface materials and conditions and has not relied on any subsurface information furnished to Subcontractor by the Owner or the Contractor.~~

Article 20.  Disputes

20.1     In the event of any dispute between the Contractor and the Owner which involves the Work required to be performed by the Subcontractor under this Subcontract, or in the event of any dispute between the Contractor and the Subcontractor which involves a claim against the Owner for either additional compensation and/or an extension of time under the Contract Documents, the Subcontractor agrees to be bound to the Contractor and the Contractor agrees to be bound to the Subcontractor to the same extent that the Contractor is bound to the Owner by the terms of the Contract Documents and by all decisions or findings made thereunder by the persons so authorized in the Contract Documents, or by an administrative agency or court of competent jurisdiction, whether or not the Subcontractor is a party to the proceedings before said person, agency or court. ⎯⎯⎯⎯ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
| , provided Subcontractor had the same opportunity to participate in such proceedings as is available to Contractor. |

20.2     If any dispute or claim is prosecuted or defended by the Contractor, and the Subcontractor is not directly a party or litigant, the Subcontractor agrees to cooperate fully with the Contractor and shall pay or reimburse the Contractor for

all expenses and costs, including reasonable attorney's fees, incurred in connection therewith to the extent of the Subcontractor's interest in such claim or dispute.

20.3    It is expressly understood and agreed in connection with the determination of such claim or disputes that the Contractor shall never be liable to the Subcontractor to any greater extent than the Owner is liable to the Contractor.

20.4    In the event of any claim or dispute between the Contractor and the Subcontractor, it is further specifically agreed by the parties hereto that no claim shall interfere with Work required to be performed under this Subcontract, which shall continue without interruption pending the resolution of such claim or dispute.

Article 21. Default

21.1    In the event the Subcontractor fails to comply, or becomes unable to comply, or with reasonable probability (as determined solely by the Contractor) will become unable to comply, with any of the provisions of this Subcontract; or in the event the Subcontractor fails at any time to supply a sufficient number of properly skilled workmen with sufficient materials, equipment or plant of proper quality or fails in any respect to prosecute the Work with promptness and diligence; or causes by any action or omission a stoppage of or delay in the Work of the Contractor or other subcontractor of the Contractor; or in the event the Subcontractor abandons its Work or any part thereof; and such failure, inability or deficiency (as determined solely by the Contractor) is not corrected within ~~three (3)~~five (5) days after written demand by the Contractor to the Subcontractor; the Contractor may, in addition to and without prejudice to any other right or remedy, take over and complete the performance of the Subcontract, at the expense of the Subcontractor; or the Contractor may, without taking over the Work, immediately and without notice to the Subcontractor, furnish the necessary materials and labor through itself or others, to remedy the situation, all at the expense of the Subcontractor.

21.2    The parties hereto further agree that any of the following shall, at the option of the Contractor, constitute inability to comply with the provisions of this Subcontract for purposes of this article: a) the filing of a petition in bankruptcy or a petition for the appointment of a receiver by or against the Subcontractor; b) the insolvency of the Subcontractor or its inability to meet its debts as they mature; c) the establishment of a receivership or any committee of creditors involving the Subcontractor's business or assets, or the making of an assignment for the benefit of the Subcontractor's creditors; or d) the failure or refusal of the Subcontractor to respond to any written order or notice duly issued by the Contractor.

~~21.3    The Subcontractor hereby waives any and all defenses, claims or causes of action against the Contractor based in whole or in part on the contention that the Subcontractor would have been able to comply with the Subcontract.~~

21.4    It is further agreed that the Contractor shall have access to and may take possession of the Subcontractor's material for the project stored on site or off site, whether or not payment has been made for said material, ~~tools, and equipment~~ which may be located at the site of the Work or in route to the site that may be necessary to prosecute the Work hereunder to completion, all without liability on the part of the Contractor for any damage or other injury to such materials, ~~tools and equipment.~~

21.5    Upon any action by the Contractor pursuant to this article, the Subcontractor shall not be entitled to further payment on this Subcontract until the Work has been completed and accepted by the Owner and payment therefore has been received by the Contractor from the Owner.

21.6    If the expense incurred by the Contractor exceeds the unpaid balance due, the Subcontractor agrees to promptly pay the difference to the Contractor together with interest thereon at the rate of the prime rate plus 2% per annum until paid, and the Contractor shall have a lien upon all material, ~~tools, and equipment~~ taken possession of to secure the payment thereof. However, if the unpaid balance due to Subcontractor exceeds the expense incurred by the Contractor, the excess shall promptly be paid by the Contractor to the Subcontractor.

21.7    With respect to expenses incurred by the Contractor pursuant to this article, it is hereby agreed that the costs and expenses chargeable to the Subcontractor as herein before provided shall include, without restriction, the cost of materials, labor, subcontracts, purchase orders, transportation, equipment and expense thereon, supplies, services, insurance, taxes, appliances, tools, utilities, power used or consumed, supervision, administration, job overhead, travel, attorney's fees, legal and accounting fees and expenses, the Contractor's general overhead as allocated to the Work and other costs and expenses incurred or sustained by the Contractor, plus ten percent (10%) profit on the actual cost of the work performed as well as on the amount of claims paid by the Contractor for the Subcontractor or for which it deems itself liable.

21.8    In no instance will any action whatsoever taken by the Contractor pursuant to this Subcontract relieve or mitigate the Subcontractor's full and absolute responsibility for any and all of the Subcontractor's obligations under this Subcontract.

21.9    In the event the employment of the Subcontractor is terminated by the Contractor for cause under this Article and it is subsequently determined by a court of competent jurisdiction that such termination was without cause, such termination shall thereupon be deemed a Termination for Convenience under Article 22 and the provisions of Section 22.1 shall apply.

Article 22.  Termination for Convenience

The Contractor may, at any time, terminate this Subcontract in whole or in part for the Contractor's convenience and without cause.  Termination by the Contractor under this Paragraph shall be by   notice of termination delivered to the Subcontractor specifying the extent of termination and the effective date of such termination, the Subcontractor shall recover as its sole remedy payment for work properly performed in connection with the terminated portion of the Work prior to the effective date of termination and for items properly and timely fabricated off the Project site, delivered and stored in accordance with the Contractor's instructions.  The Subcontractor hereby waives and forfeits all other claims for payment and damage, including, without limitation, anticipated profits.

Article 23.  Coordination

23.1    The Subcontractor agrees to perform the Work called for in this Subcontract in such a manner that it will not injure or damage any other Work performed by the Contractor or any other subcontractor.

23.2    The Subcontractor further agrees to cooperate with the Contractor and other subcontractors whose work might interfere with the Subcontractor's Work and to prepare sketches and drawings as directed, and/or to participate in the preparation of coordinated drawings in areas of congestion, specifically noting and advising the Contractor of any such interference. The aforementioned coordination is to be arranged by the Contractor in a timely fashion such that Subcontractor is able to incorporate into the shop drawing submissions.

23.3    The Subcontractor agrees to have a representative present at regularly scheduled jobsite coordination meetings.  This representative must be a principal of the company or designated project manager who has the authority to comply with all scheduling and other requests of the Contractor.  It is further agreed that the Subcontractor's representative shall appear promptly at the designated meeting time.  If the Subcontractor frequently fails to attend these meetings on a timely basis, the Contractor shall have the right to declare the Subcontractor in default of this Subcontract, and seek all legal remedies in accordance with the terms of this Subcontract.

[without notification to Contractor's Project Manager]

Article 24.  Indemnification

24.1    The Subcontractor shall defend, indemnify, and hold harmless (i) Contractor, and its parent, subsidiary and affiliated companies, and each of their respective employees, directors, officers, and shareholders, as applicable, and (ii) Owner, and its parent, subsidiary and affiliated companies, and each of their respective employees, directors, officers, shareholders and members, as applicable, and (iii) any other person or entity as required by Owner under the Contract Documents (individually as an "Indemnified Party," collectively as the "Indemnified Parties"), from and against any and all liabilities (including, but not limited to, contractual liabilities), claims (even if such claims are groundless, false or fraudulent), losses, damages, penalties, fines, costs, and/or expenses (including but not limited to court costs and reasonable attorneys' fees), attributable to injury (including but not limited to sickness, disease, or death) to any person (including but not limited to Subcontractor's employees) and/or damage to any property of whatsoever kind or nature, arising out of or relating to the execution of the Work, or preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise, or other directives from Contractor, or the design, manufacture, delivery, installation, use, misuse, maintenance, erection, repair, operation, or failure of any part of all of the goods, materials, machinery, and/or equipment (even if such was furnished, rented, or loaned by any of the Indemnified Parties), whether or not based in whole or in part upon the active, passive, concurrent (but not sole) negligence of an Indemnified Party, or upon any alleged breach of any statutory duty or obligation on the part of an Indemnified Party., [Notwithstanding anything to the contrary, Subcontractor is responsible only to the extent of its negligence.]

[other than the Work itself]

24.2    In the event and to the extent that a claim is made by an employee of Subcontractor against an Indemnified Party hereunder, the intent of this Article is that Subcontractor shall, and it hereby agrees, to defend, indemnify, and hold harmless the Indemnified Party to the same extent as if the claim was made by a non-employee of Subcontractor. Accordingly, in addition to the above provisions, and in order to render the parties' intent and this indemnity agreement fully enforceable, Subcontractor, in an indemnification claim hereunder, hereby expressly and without reservation waives any defense or immunity it may have under any applicable Worker's Compensation Laws or any other statute or judicial decision disallowing or limiting such indemnification, and consents to a cause of action for indemnity.

In the event either party is required to retain an attorney with respect to a dispute between the parties hereto, the prevailing party shall be entitled to recover from the losing party its attorney fee's. All references in this contract to Contractor being able to recover its attorney's fees shall apply equally to Subcontractor. This contract shall not be interpreted to mean that only the Contractor is entitled to recover attorney;s fees, but rather is intended to allow the prevailing party to recover attorney's fees, but rather is intended to allow the prevailing part to recover attorney fees as part of its award or compensation.

24.3    Subcontractor's obligation to defend the Indemnified Parties under this Article is in addition to Subcontractor's obligation to indemnify and hold harmless the Indemnified Parties. Subcontractor shall, at Subcontractor's expense, defend an Indemnified Party against any claim containing any allegation(s) that ~~may potentially~~ give rise to Subcontractor's obligation to indemnify an Indemnified Party under Articles 24.1 and/or 24.2 above. Subcontractor shall retain an attorney to represent such Indemnified Party, provided, however, that any attorney employed in such defense must be satisfactory to the Indemnified Party. The Subcontractor's obligation to defend an Indemnified Party shall continue until such time as it is determined by court or arbitrator(s), through all appeals and/or the expiration of applicable appeal periods, that Subcontractor is not obligated to provide such defense.

24.4    If there are any damages or Claims of any kind or nature that have not been settled or discharged when the Work is finished, final settlement between the Contractor and the Subcontractor, final payment under the Subcontract, and acceptance of the Subcontract Work shall be deferred until all such Claims shall have been paid, settled, adjusted, or suitable coverage or indemnity (including but not limited to a bond) acceptable to Contractor is provided by Subcontractor or Subcontractor's insurance carrier.

24.5    The Subcontractor's obligations to defend, indemnify, and hold harmless set forth in this Article shall continue after completion of the Work to be performed under this Subcontract, final payment under the Subcontract, and termination of this Subcontract or other agreement under which the Work is being performed, it being agreed that such rights and obligations are and shall be continuing in nature and effect.

24.6    Subcontractor shall pay for all attorneys' fees and related legal expenses incurred by Contractor to enforce its rights under this Article. In addition, the Subcontractor shall bear any expense of an Indemnified Party incurred, in whole or in part, due to any claim or other matter indemnified against hereunder, including reasonable attorney's fees and court costs in the defense of, or preparing for the defense against, any such claim, even if such claim or any lawsuit arising therefrom is groundless, false or ~~fraudulent~~.

Article 25.  Elimination or Reduction of Work

In the event of elimination or reduction of the Work to be performed under this Subcontract by reason of termination or modification of the Contract Documents or a change in the Work to be done thereunder, either in accordance with the terms of the Contract or the Contract Documents or by default by the Owner, the Subcontractor shall not be entitled to recover from the Contractor more than its fair and equitable portion of any sums received by the Contractor for work done or materials supplied by this the Subcontractor on this Subcontract. The rights and claims of the Contractor, other subcontractors and third parties shall be taken into consideration in determining the Subcontractor's fair and equitable share.

Article 26.  Collective Bargaining Agreements and Labor Harmony

26.1    The Subcontractor shall comply with, observe and be bound by all terms and provisions of any collective bargaining agreements executed by the Contractor or on the Contractor's behalf. The Subcontractor shall indemnify and save the Contractor harmless from and against any claim, including court costs and attorney's fees, resulting in any manner whatsoever from the Subcontractor's failure to comply with the provisions of this article of this Subcontract. In the event the Subcontractor fails or refuses to comply with, observe or be bound by any terms or provision of any such collective bargaining agreements and does not correct such failure or refusal within ~~2448~~ hours after notice thereof is furnished to the Subcontractor by the Contractor, the Subcontractor shall be deemed to be in default of this Subcontract.

written

26.2    If directed by the Contractor, the Subcontractor shall perform all Work with union labor and equipment.

26.3    The Subcontractor accepts all responsibility to maintain labor harmony with all trades working on this Project during the performance of the Subcontractor's Work. Furthermore, the Subcontractor will endeavor to provide all contacts, coordination and agreements with such local labor organizations as are required to ensure such harmony and without disruption of the Work in any manner.

Article 27.  Permits, Compliance with Law and Testing

27.1    The Subcontractor shall obtain and pay for all permits, fees, testing, licenses and official inspections made necessary by its Work and shall perform all Work in accordance with all laws, ordinances and regulations (including but not limited to all OSHA requirements) bearing on the Work required under this Subcontract. Subcontractor shall be responsible to schedule and coordinate all inspections for its Work.

27.2    Without limitation of any other provision hereof, if the Subcontractor performs any Work which is contrary to or in violation of any such laws, ordinances, codes, rules and regulations, Subcontractor shall defend, indemnify and hold harmless the Contractor and the Owner from any and all claims, citations, violations and/or losses which arise therefrom, and make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

REWORD CODES/RULES ECT.

27.3    The Subcontractor shall notify the Contractor seven (7) days in advance of any testing and shall cooperate with the Contractor, the Owner, the Architect, and the engineer for the Project to make any adjustments that may be required for final testing at no additional costs to the Contractor.

Article 28.    Independent Contractor

The Subcontractor certifies that it is "an independent Contractor" subject, as an employer, to all applicable statutes and regulations with respect to such status.

Article 29.    Employees

The Subcontractor shall not employ any person in performance of this Subcontract whose employment might be reasonably objected to by the Contractor or the Owner and hereby agrees to promptly remove from the Project any such person or party.

Article 30.    Public Works Employment Verification Act

30.1    The Subcontractor shall comply with all applicable provisions of Pennsylvania's Public Works Employment Verification Act, 43 P.S. § 167.1, et seq. In accordance with the Act, the Subcontractor will use the E-Verify Program operated by the Department of Homeland Security to verify the employment eligibility of each new employee hired after January 1, 2013 within five (5) business days of the hire date. Prior to commencing Work, the Subcontractor shall fully and accurately complete a Commonwealth of Pennsylvania Public Works Employment Verification Form and shall provide that form to the Owner. The Public Works Employment Verification Form can be obtained on the website of Pennsylvania's Department of General Services: www.dgs.state.pa.us. For all new employees hired during the course of the Project, the Subcontractor must continue to use the E-Verify Program to verify their employment eligibility.

30.2    The Subcontractor's subcontractors, at any tier, shall also comply with the provisions of the Public Works Employment Verification Act. If the Subcontractor enters into any subcontracts relating to the Project, the subcontracts shall contain information about the requirements of the Public Works Employment Verification Act, and shall identify that the applicable form may be obtained at www.dgs.state.pa.us.

Article 30A.    Notice

30.1    Written notice, where required by the terms of this Subcontract, may be accomplished by personal delivery of said notice or by use of the United States mail or a facsimile communication. The written notice shall become effective upon the date stated therein, or, if no such date is stated, upon the date upon which delivery is complete.

30.2    Personal delivery is complete when the notice is delivered to the Subcontractor or its representative at the Project or at the office address of the Subcontractor appearing in this Subcontract. The Subcontractor shall, at all times during its Work, have a representative authorized to receive written notices present on the Project site during all normal working hours. In the absence of such a representative, personal delivery is complete when the notice is delivered to any of its subcontractors, supervisors or workmen, or in their absence, left in a conspicuous place on the Project site in the area of the Subcontractor's Work.

30.3    If facsimile is used, completion of the facsimile will have a confirmation notice attached thereto, to indicate that the fax has been sent in its entirety, and shall have a date reflected thereon.

30.4    When regular or overnight mail is used, delivery is complete for the purposes of paragraph 30.1.1 on the date first occurring among the following: a) on the day the communication is received by the Subcontractor evidenced by a return receipt furnished by the United States Postal Service or by any recognized messenger or delivery service, or b) on the third day after the notice is deposited in the U.S. mail addressed to the Subcontractor at its last known address.

## Article 31. Superintendent

The Subcontractor shall at all times maintain a qualified and skilled superintendent or foreman at the site of the Work who shall be satisfactory to the Owner, the Owner's authorized agent and/or the Contractor. Such superintendent or foreman shall be duly and legally authorized to represent and act for the Subcontractor with respect to all matters in connection with or arising out of Work under this Subcontract.

## Article 32. The Subcontractor's Dealing with the Owner

It is agreed that all of the Subcontractor's dealings with the Owner's authorized agent, the Owner, or any other party named in the Contract Documents shall be through the Contractor. The Subcontractor further agrees that it shall not make any agreement with the Owner's authorized agent or with the Owner pertaining to any phase of the performance of this Subcontract.

## Article 33. Contributions, Taxes and Insurance

33.1    The Subcontractor agrees to and does hereby accept full and exclusive liability for the payment of all contributions, taxes, insurance of any description whatever, now or hereafter imposed by any authority, which are measured by the wages, salaries or other remunerations paid to persons employed by the Subcontractor on Work performed pursuant to the terms of this Subcontract.

33.2    The Subcontractor further agrees to and does hereby accept full and exclusive liability for the payment of all personal property taxes, inventory taxes, sales taxes, use taxes, excise taxes, fuel taxes, transportation taxes, franchise taxes, business privilege taxes and all other taxes, and/or tax assessments in any manner whatsoever relating to the materials, supplies, tools, machinery, equipment and plant which may be purchased, acquired, rented or used by the Subcontractor relating to all Work performed under this Subcontract.

## Article 34. Insurance Requirements, Waiver of Rights of Recovery and Waiver of Subrogation

34.1    The Subcontractor is required to maintain the insurance coverage set forth in **Exhibit B**, which is incorporated herein. The Subcontractor is also bound by the Waiver of Rights of Recovery set forth in Exhibit B.

34.2    To the fullest extent permitted by applicable law, the Subcontractor waives all subrogation rights against the Contractor, the Owner, and any of their agents and employees: (1) for damages caused by fire or other perils to the extent covered by property insurance provided under the Contract, this Subcontract or other property insurance applicable to the Work, except such rights as they may have to proceeds of such insurance held by the Owner or the Contractor as fiduciary; ~~and (2) for other claims to the extent arising out of a loss or claim covered by the Subcontractor's liability, automobile or worker's compensation insurance.~~ The Subcontractor shall require of the Subcontractor's sub-subcontractors, agents and employees by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. ~~The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.~~

## Article 35. Effective Date

The effective date of this Subcontract is intended by both parties to be the date noted in the initial paragraph and the dates appearing by the signatures at the end of this document merely indicate the dates that the signatures were affixed.

## Article 36. Waiver of Liens Releases and Certified Payrolls

36.1    If the Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, labor or services provided to the Project by the Subcontractors, then the Subcontractor agrees to waive its right to file a mechanics' lien and that no mechanics' liens, notices, or claims, or materialman's liens, notices, or claims, or any other liens or claims of any kind whatsoever will be filed, enforced, or maintained with respect to the goods, materials, and equipment supplied, labor or services performed pursuant to this Subcontract against the Project for which they are supplied or performed, or against the Owner, real property, building, or other improvements of which the Project is a part, or any part or parts thereof or the appurtenances thereto by the Subcontractor, its successors and assigns. If the bond posted by the Contractor guarantees payment for goods, materials, and equipment supplied, labor or services provided to the Project by sub-subcontractors, suppliers, materialman and other entities pursuant to a contract with the Subcontractor, then the Subcontractor shall obtain lien

waivers from such sub-subcontractors, suppliers, materialman and other any other similarly situated entities, stating that liens may not be filed on the Project and provide written notice of this lien waiver provision to its sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, prior to and before any labor or services are performed, or goods, materials, or equipment are supplied to the Project pursuant to this Subcontract.

36.2     If the Contractor posts a bond guaranteeing payment for goods, materials, and equipment supplied, or labor or services performed by the Subcontractor, then, in the event a mechanics' lien, notice, or claim, or materialman's lien, notice, or claim, or construction lien claim, or lien, or any other lien or claim of any kind whatsoever is filed, enforced, or maintained by the Subcontractor and/or any of the Subcontractor's sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them, then the Subcontractor shall defend, indemnify, and hold the Contractor harmless from such liens and/or claims, and shall also cause said mechanics' lien, notice, or claim, or materialman's lien, notice, claim, construction lien claim, or other lien of any kind whatsoever, to be discharged in accordance with applicable law. The Subcontractor also agrees to pay and reimburse the Contractor for all costs, expenses and attorney's fees incurred by the Contractor in defending, responding to and/or discharging liens or claims filed by the Subcontractor and/or any of the Subcontractor's sub-subcontractors, suppliers, materialman, and all other persons or entities acting by, through, or under it or them whenever a valid lien waiver is in place on a Project.

36.3     As a prerequisite to payment, the Subcontractor agrees that it will execute, in a form satisfactory to owner, all documents required by the Contractor that evidence, ensure, and guarantee that the Subcontractor has made payment for all Work performed in connection with this Subcontract, including, but not limited to, Releases and Partial Waiver of Liens, in consideration for each and every payment and up the date covered by the payment, whether partial or final. Said Releases and Partial Waiver of Liens shall include, whenever so requested by the Contractor, and in a form acceptable to the Contractor, Partial Waiver of Liens and Release of claims, costs, expenses, fees, charges, changes, change orders, or change order requests that arise out of or relate to the Subcontractor's Work performed from all contractors, suppliers, persons and/or entities that have, or will, provide labor, materials, equipment, machinery, fixtures, services, or labor under any agreement(s) with the Subcontractor for the Subcontractor's Work under this Subcontract. A sample Partial Lien Waiver and Release Form is attached hereto as Exhibit I to this Subcontract. The Contractor reserves the right to modify the form of this Partial Lien Waiver and Release.

36.4     The Subcontractor, when required by the Contractor as a condition precedent to the making of final payment hereunder, shall furnish to the Contractor a full and complete release and discharge, in a form satisfactory to the Contractor, of all liens, claims and demands arising out of or relating to the Subcontractor's Work and any and all materials furnished, work done and equipment used in connection therewith. Furthermore, if, prior to final payment, the Owner or any party providing financing for the Project requests a release of liens from the Subcontractor, the Subcontractor shall execute and deliver such release of liens in a form satisfactory to the Owner or such other party.

36.5     As a prerequisite to any and all payments due under this Subcontract, the Subcontractor agrees that it will submit all certified payroll documents in the time and manner required by the Contract between the Contractor and the Owner, and if no time is specified, shall be submitted on a weekly basis. The Subcontractor and their lower tier subcontractors shall provide (1) original and (2) copies of certified payroll, please see Exhibit O.

Article 37.  Applicable Law

The law of the State in which the project is located, not including choice of law analysis, shall be applicable to this Contract and shall be used to decide any dispute related to this Contract.

Article 38.  Determination of Disputes

38.1     Any dispute arising out of or related to this Subcontract shall be governed by the laws of the Commonwealth of Pennsylvania. The Subcontractor submits to personal jurisdiction in MontgomeryPhiladelphia County, Pennsylvania, and expressly waives any right to select venue or object to any venue selected by the Contractor, in any action arising out of or related to this Subcontract or any bond(s) posted by the Contractor. The Subcontractor agrees that if any dispute arising out of or related to this Subcontract, or brought against any bond(s) posted by the Contractor, cannot be resolved amicably, the Contractor has an express right to select venue for appropriate legal or equitable proceedings in MontgomeryPhiladelphia County, Pennsylvania or the site of the Project. The Subcontractor hereby expressly waives its right to a jury trial, and further agrees that at the Contractor's sole discretion, the Contractor may choose to have a jury trial in any matter resolved through the courts. The Subcontractor acknowledges that the Contractor's Bonding Company is an intended third-party beneficiary of this provision.

38.2    Any claim arising out of or related to the Contract not resolved by the parties, ~~except those in which mediation is expressly waived by the Contractor,~~ shall first be subject to mediation. The parties shall endeavor to resolve their claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Agreement and with the American Arbitration Association. Arbitration or legal or equitable proceedings shall be stayed pending mediation for a period of sixty (60) days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. The parties shall share the mediator's fee equally, with the filing party paying the filing fee. The mediation shall be held in Philadelphia, Pennsylvania, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

38.3    Claims not resolved by mediation shall then be decided by ~~the dispute resolution process in the Contract, litigation or arbitration at the sole discretion and choice of the Contractor. If the Contractor chooses arbitration~~litigation. Notwithstanding the preceding provision, if the parties shall mutually determine to arbitrate their claim, it shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The arbitration shall be held in Philadelphia, Pennsylvania, unless another location is mutually agreed upon. Any judgment on an award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof and shall be final and binding. Under such circumstances, the Arbitrator(s) shall have the exclusive power to determine issues of arbitrability.

Article 39. Nondiscrimination in Employment

39.1    UNLESS EXEMPT IN ACCORDANCE WITH EXECUTIVE ORDER 11246 OF SEPTEMBER 24, 1965, DURING THE PERFORMANCE OF THIS CONTRACT, THE SUBCONTRACTOR AGREES AS FOLLOWS:

39.2    The Subcontractor will not discriminate against any employee, or applicant for employment because of sex, race, religion, color or national origin. The Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to their age, sex, religion, color or national origin. The Subcontractor agrees to post in conspicuous places, available to the employees and applicants for employment, notices to be provided setting forth the provisions of the nondiscrimination clause.

39.3    The Subcontractor will state, in all solicitations or advertisement for employees, placed by or on behalf of the Subcontractor, that all qualified applicants will receive consideration for employment without regard to sex, race, religion, color or national origin.

39.4    The Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and the rules, regulations and relevant orders of the Secretary of Labor.

39.5    The Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965 and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access of its books, records, and accounts by the administering agency and the Secretary of Labor for purposes of investigation to ascertain compliance with rules, regulations and orders.

39.6    In the event the Subcontractor is in non-compliance with the nondiscrimination clauses of the Contract or with any of the said rules, regulations or orders, this Contract may be canceled, terminated or suspended in whole or in part, and the Subcontractor may be declared ineligible for further government contracts or federally assisted construction contracts in accordance with procedures authorized in Executive Order 11246 of September 24, 1965 and such other sanctions as may be imposed and remedies invoked as provided in the said Executive Order or by rules, regulations or orders of the Secretary of Labor, or as otherwise provided by Law.

39.7    The Subcontractors will include the provisions of Paragraph One (1) through Seven (7) in every sub-contract or purchase order unless exempted by rules, regulations and orders of the Secretary of Labor issued pursuant to Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each Sub-contractor or Vendor. The Subcontractor will take such action with respect to any Sub-subcontract or Purchase Order as the administering agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided however, that in the event the Subcontractor becomes involved in, or is threatened with, litigation with a Sub-subcontractor or vendor as a result of such direction by the administering agency, the Subcontractor may request the United States to enter into such litigation to protect the interests of the United States.

Article 40. Governmental Requirements

40.1     If the Contract Documents incorporate compliance with Section 3 of the Housing and Urban Development Act, the Subcontractor shall institute a program to hire low and very low Section 3 individuals, Section 3 residents and Section 3 business concerns to the greatest extent possible to achieve the hiring goals set forth in the Contract Documents and comply with all reporting requirements.

40.2     If the Contract Documents incorporate the Uniform Federal Accessibility Standards (UFAS), all Work shall be in strict compliance with all UFAS requirements. Any non-compliant or incorrect installations/equipment will be replaced /repaired at the Subcontractor's expense.

40.3     If the Contract Documents incorporate the American Recovery and Reinvestment Act of 2009 (ARRA), the Subcontractor acknowledges that compliance includes, but is not limited to Whistleblowers Protection, Buy American Requirement as defined by ARRA, and GAO and Inspector General Oversight requirements. To comply with section 1605 of ARRA, the Subcontractor shall provide letter documentation from the manufacturer signed by an authorized representative that the material/product complies. This letter shall be addressed to the Contractor and be product specific. The Subcontractor shall note that international exceptions listed in 2 C.F.R. 176.90 may not apply unless the program grantee is listed in the Appendix to Subpart B in the OMB Interim Guidance. These requirements are in addition to, and distinct from, the Buy American Act.

40.4     The Subcontractor shall comply with all health and safety requirements of OSHA, Contract Documents or the Contractor, whichever is stricter. The Subcontractor shall submit all required Hazardous Substance Survey forms along with Material Safety Data Sheets in accordance with all applicable statutes and OSHA Hazard Communication Regulations. The Subcontractor shall require all personnel to wear hard hats at all times unless otherwise authorized by the Contractor in writing.

**Section F**        Special Provisions:

The below listed exhibits are attached hereto and made a part of this Subcontract:

| | |
|---|---|
| Subcontract Exhibit A | Scope of Work (58 pages) |
| Subcontract Exhibit B | Insurance Requirements (4pages) |
| Subcontract Exhibit C | Waiver of Liens (6 pages) |
| Subcontract Exhibit D | List of Contract Documents (8 pages) |
| Subcontract Exhibit E | Payment Terms/Stored Materials (4 pages) |
| Subcontract Exhibit F | Project Safety Requirements (1 page) |
| Subcontract Exhibit G | Application for Payment (2 pages) |
| Subcontract Exhibit H | Change Request Form (1 page) |
| Subcontract Exhibit I | Partial Release (2 pages) |
| Subcontract Exhibit J | Final Release (2 pages) |
| Subcontract Exhibit K | Bond Requirements (N/A – Omitted) |
| Subcontract Exhibit L | Form Schedule of Values (1 pages) |
| Subcontract Exhibit M | Submittal Requirements (11 pages) |
| Subcontract Exhibit N | Form Subcontractor/Supplier List (1 page) |
| Subcontract Exhibit O | Certified Payroll Form (N/A - Omitted) |
| Subcontract Exhibit P | Proposed Project Schedule (2 pages) |

————                              **DALE CORP.**

Witness                           By: _William P. Van Ness
                                       (Typed/Printed Name)
                                  Title:_ President
                                  Date:

**CONSTRUCTION COMPANY**            [SUBCONTRACTOR NAME]BERLIN STEEL

Witness                           By:

_____ (Typed/Printed Name)

Title: _____

Date:_____

# Exhibit B

# APPLICATION AND CERTIFICATE FOR PAYMENT

To: DALE CORPORATION
70 LIMEKILN PIKE
GLENSIDE, PA 19038

Project: **8200 GERMANTOWN AVE.**

From  The Berlin Steel Construction Company  VIA
Contractor: 200 Lindenwood Drive  Architect:
Malvern, PA 19355

APPLICATION NO: PA2635REQ14
PERIOD TO: 3/8/2017
INVOICE DATE: 3/8/2017
PROJECT NO: PA-2635

CONTRACT DATE: 10/1/2014

Distribution to:
☐ OWNER
☐ ARCHITECT
☐ CONTRACTOR
☐
☐

Contract For:

## CONTRACTOR'S APPLICATION FOR PAYMENT :

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM | $3,204,000.00 |
| 2. Net change by Change Orders | $99,642.96 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) | $3,303,642.96 |
| 4. TOTAL COMPLETED AND STORED TO DATE | $3,303,642.96 |

5. RETAINAGE

| | | |
|---|---|---|
| a.0.00 % of Completed Work | $0.00 | |
| (Column D + E on Continuation Sheet) | | |
| b.0.00% of Stored Material | $0.00 | |
| (Column F on Continuation Sheet) | | |
| Total Retainage (Line 5a + 5b or Total Columns I on Continuation Sheet) | | $0.00 |

| | |
|---|---|
| 6. TOTAL EARNED LESS RETAINAGE | $3,303,642.96 |
| (Line 4 less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | |
| (Line 6 from prior Certificate) | $2,973,278.66 |
| 8. CURRENT PAYMENT DUE | **$330,364.30** |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | |
| (line 3 less line 6) | $0.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $121,124.00 | $-21,481.04 |
| Total approved this month | | |
| TOTALS | $121,124.00 | $-21,481.04 |
| NET CHANGES by Change Order | $99,642.96 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due

CONTRACTOR: The Berlin Steel Construction Company

By:_____  Date: 3-8-2017

State of: PA
County of: CHESTER
Sworn and subscribed to before me this 8th day of MARCH, 2017
Notary Public: _____
My Commission expires: Sept. 14, 2020

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Tammy L. Friel, Notary Public
East Whiteland Twp., Chester County
My Commission Expires Sept. 14, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on-site observations and the data comprising the application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of Work is in accordance with the contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED...............$_____

*(Attached explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*
ARCHITECT:

By: _____  Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance or payment are without prejudice to any rights of the Owner or Contractor under this Contract

All values shown on this schedule are for accounting purposes only and are provided only as means of itemizing the work. The actual value of any item deducted from the work must be supplied and approved by BSCC.

APPLICATION AND CERTIFICATE FOR PAYMENT,
containing Contractor's signed Certification, is attached

APPLICATION NO.: 263500014
APPLICATION DATE: 3/8/2017
PERIOD TO: 3/8/2017
PROJECT NO: PA-2635

| A | B | C | D | E | F | G | % (G/C) | H | I |
|---|---|---|---|---|---|---|---|---|---|
| | | | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | | BALANCE TO FINISH (C-G) | RETAINAGE |
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
| 05 | STRUCT- MATERIAL | 847,000.00 | 847,000.00 | | | 847,000.00 | 100.00 | | |
| 10 | STRUCT - DETAILING | 87,000.00 | 87,000.00 | | | 87,000.00 | 100.00 | | |
| 15 | STRUCT - ENGINEERING | 29,000.00 | 29,000.00 | | | 29,000.00 | 100.00 | | |
| 20 | STRUCT - FABRICATION | 549,000.00 | 549,000.00 | | | 549,000.00 | 100.00 | | |
| 25 | STRUCT - FREIGHT | 69,000.00 | 69,000.00 | | | 69,000.00 | 100.00 | | |
| 30 | STRUCT - METAL DECK | 170,000.00 | 170,000.00 | | | 170,000.00 | 100.00 | | |
| 35 | STRUCT - TAX | 95,000.00 | 95,000.00 | | | 95,000.00 | 100.00 | | |
| 40 | STRUCT - ERECTION | 1,106,000.00 | 1,106,000.00 | | | 1,106,000.00 | 100.00 | | |
| 45 | STRUCT - TARGET FUND | -78,000.00 | -78,000.00 | | | -78,000.00 | 100.00 | | |
| 50 | MISC - MATERIAL | 110,900.00 | 110,900.00 | | | 110,900.00 | 100.00 | | |
| 55 | MISC - DETAILING | 28,750.00 | 28,750.00 | | | 28,750.00 | 100.00 | | |
| 60 | MISC - ENGINEERING | 5,600.00 | 5,600.00 | | | 5,600.00 | 100.00 | | |
| 65 | MISC - FABRICATION | 73,000.00 | 73,000.00 | | | 73,000.00 | 100.00 | | |
| 70 | MISC - TAX | 7,450.00 | 7,450.00 | | | 7,450.00 | 100.00 | | |
| 75 | MISC - ERECTION | 115,500.00 | 115,500.00 | | | 115,500.00 | 100.00 | | |
| 80 | MISC - TARGET FUND | -11,200.00 | -11,200.00 | | | -11,200.00 | 100.00 | | |
| 100 | CO #01 | 63,687.00 | 63,687.00 | | | 63,687.00 | 100.00 | | |
| 105 | CO #02 | -18,575.00 | -18,575.00 | | | -18,575.00 | 100.00 | | |
| 110 | CO #03 Storm Pipe Relocation | 5,312.00 | 5,312.00 | | | 5,312.00 | 100.00 | | |
| 115 | CO #04 | -836.04 | -836.04 | | | -836.04 | 100.00 | | |
| 125 | CO#06 Dunnage Steel Posts | 10,323.00 | 10,323.00 | | | 10,323.00 | 100.00 | | |
| 130 | CO#07 Dunnage Steel Framing | 22,272.00 | 22,272.00 | | | 22,272.00 | 100.00 | | |
| 135 | CO #08 | -2,070.00 | -2,070.00 | | | -2,070.00 | 100.00 | | |
| 140 | CO#13 Powder Coat Balc. Rails | 1,050.00 | 1,050.00 | | | 1,050.00 | 100.00 | | |
| 145 | CO#14 Field Time Balcony Rails | 18,480.00 | 18,480.00 | | | 18,480.00 | 100.00 | | |
| | Totals: | 3,303,642.96 | 3,303,642.96 | 0.00 | 0.00 | 3,303,642.96 | ###### | 0.00 | 0.00 |

All values shown on this schedule are for accounting purposes only and are provided only as means of itemizing the work. The actual value of any item deducted from the work must be supplied and approved by BSCC.